**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

**HANNAH DAVIS A/K/A HANNAH**          **CASE NO.: 5:19-cv-01330**
**CALLAWAY**

                                                      **JUDGE FOOTE**

**VERSUS**

**DESOTO PARISH SHERIFF'S**          **MAGISTRATE JUDGE HORNSBY**
**DEPARTMENT, SHERIFF JAYSON**
**RICHARDSON, et al**

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation

By: /s/ James Ashby Davis_____
      James R. Sterritt, #18447
      Gregg A. Wilkes, #20419
      James Ashby Davis, #37653

333 Texas Avenue, Suite 1700
Post Office Box 22260
Shreveport, Louisiana 71120-2260
Telephone:  (318) 221-6277
Telecopier:  (318) 227-7850
james.sterritt@cookyancey.com
gregg.wilkes@cookyancey.com
ashby.davis@cookyancey.com
ATTORNEYS FOR DEFENDANTS,
DESOTO PARISH SHERIFF JAYSON
RICHARDSON, CHRISTOPHER THOMAS, AND
JEFFERY HENDERSON, JR.

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................................iii

I.    Introduction......................................................................................................................1

II.   Factual Background .........................................................................................................2

II.   Callaway's Claims ..........................................................................................................6

III.  Law and Analysis. ...........................................................................................................7

       A.   Searches and Seizures under the Fourth Amendment........................................8

       B.   Qualified Immunity. ..........................................................................................9

       C.   There was probable cause to arrest Callaway for several crimes ................................10

       D.   Trooper Speir, nor Henderson or Thomas, arrested Callway.......................................12

       E.   There was no illegal search...............................................................................12

       F.   Use of force under the Fourth Amendment .....................................................14

       G.   All claims against Sheriff Richardson should be dismissed.........................................16

       H.   Plaintiff's "Other" claims have no merit and should be dismissed ............................18

IV.   Conclusion......................................................................................................................25

# **TABLE OF AUTHORITIES**

## **CASES**

*Adams v. City of Shreveport*, 269 F. Supp. 3d 743, 753 (W.D. La. 2017)....................................17

*Aguirre v. City of San Antonio*, 995 F.3d 395, 404 n.2 (5th Cir. 2021).............................4, 15, 20

*Albright v. Oliver*, 510 U.S. 266, 273 (1994) ..........................................................................9, 15

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ................................................................................9

*Anokwuru v. City of Houston*, 990 F.3d 956, 965-966 (5th Cir. 2021).........................................17

*Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001) ..............................................................10, 13

*Burge v. Par. of St. Tammany*, 187 F.3d 452, 469 (5th Cir. 1999).................................................17

*Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2010) .....................................................7

*Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (*en banc*) .....................................9, 15

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) .......................................................................7

*Chavez v. Martinez*, 538 U.S. 760, 767 (2003)............................................................................21

*Club Retro, LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)........................................................8

*Coley v. Boyett*, 2019 WL 5483440 at *8 (W.D. La. 2019) (Foote, J.) ........................................17

*Cook v. Hopkins*, 795 Fed. Appx. 906, 914 (5th Cir. 2019) .........................................................18

*District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)...........................................................8

*Dennis v. Collins*, 2018 WL 6637973 at *5 (W.D. La. 2016) .....................................................24

*Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 382
   (5th Cir. 2005)..............................................................................................................................17

*Graham v. Connor*, 490 U.S. 386, 395 (1989) ...................................................................9, 14, 15

*Gibson v. Tex. Dept. of Ins.—Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012).........18

*Horton v. California*, 496 U.S. 128, 133 n.5 (1990)................................................................8, 13

*In re Powers*, 261 Fed. Appx. 719, 723 (5th Cir. 2008) .................................................... 7

*Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) ............................................................ 8

*Miranda v. Arizona*, 384 U.S. 436, 444 (1966) ..................................................... 6, 21

*Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)............... 16, 17, 24

*Moresi v. State*, 567 So. 2d 1081, 1092-1093 (La. 1990) .............................................. 22

*Navarro v. City of San Juan, Tex.*, 624 Fed. Appx. 174, 179 (5th Cir. 2015) ............................ 22

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009)................................................................ 9

*Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009).................................... 16

*Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)................................................ 14

*Quinlan v. Sugar-Gold*, 51,191 (La. App. 2 Cir. 4/5/2017); 219 So. 3d 1173, 1185 .................. 23

*Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005)................................................ 22

*Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)........................................................ 13

*Scott v. Harris,* 550 U.S. 372, 381 (2007) ...................................................................... 7

*Stewart v. Cain*, 2013 WL 634578 at *4-5 (M.D. La. 2013) ......................................... 15

*Terry v. Ohio*, 392 U.S. 1, 30 (1968) ........................................................................... 8

*Texas v. Brown*, 460 U.S. 730, 739-740 (1983)................................................................ 8

*United States v. Beene*, 818 F.3d 157, 164 (5th Cir. 2016) ...................................... 9, 13

*United States v. Bengivenga*, 845 F.2d 593, 598 (5th Cir. 1988) ................................. 21

*United States v. Perales*, 886 F.3d 542, 545-548 (5th Cir. 2018)................................. 13

*United States v. Sokolow*, 490 U.S. 1, 7 (1989) ......................................................... 8

*United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990)..................................... 21

*Valentine v. Bonneville Ins. Co.*, 96-1382 (La. 3/17/1997); 691 So. 2d 665, 668 ...................... 24

**Statutes and Rules**

**Federal**

42 U.S.C. § 1983 ................................................................................................ *passim*

Fed. R. Civ. P. 56 ....................................................................................................... 7

Fed. R. Evid. 602 ....................................................................................................... 3

**State**

La. Const. Art. I, § 3 ............................................................................................... 22

La. R.S. 9:2798.1 ..................................................................................................... 24

La. R.S. § 14:97 ....................................................................................................... 10

La. R.S. § 14:98 ....................................................................................................... 11

La. R.S. § 14:100.1 .................................................................................................. 10

La. R.S. § 14:103 .....................................................................................................12

La. R.S. § 14:106 ....................................................................................... 11, 16, 19

La. R.S. § 40:2402.2 ................................................................................................. 4

La. Code Crim. P. Art. 213 ..................................................................................... 24

La. Code Crim. P. Art. 220 ..................................................................................... 24

**Local**

DeSoto Parish Code of Ordinances § 54-2 .................................................. 10, 16, 19

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| **HANNAH DAVIS A/K/A HANNAH CALLAWAY** | **CASE NO.: 5:19-cv-01330** |
| | **JUDGE FOOTE** |
| **VERSUS** | |
| **DESOTO PARISH SHERIFF'S DEPARTMENT, et al** | **MAGISTRATE JUDGE HORNSBY** |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

Defendants Jeffery Henderson, Jr. ("Henderson"), Christopher Thomas ("Thomas"), and Sheriff Jayson Richardson ("Sheriff Richardson") (collectively, "Defendants"), submit this Memorandum in Support of their Motion for Summary Judgment, and seek dismissal of all of Plaintiff Hannah Davis/Callaway's (now Hannah Carroll) claims (hereinafter, "Callaway"):

## I.    INTRODUCTION

Two DeSoto Parish Sheriff deputies (Henderson and Thomas) were dispatched to investigate a report of a car parked in the middle of a highway on a bridge in the early morning hours of October 11, 2018. The only person at the scene was an unconscious female in the passenger seat of the vehicle (Callaway). She was naked from the waist down. She did not respond to the deputies. The deputies put gloves on. Thomas woke her with two "sternum rubs," a method of attempting to awaken an unconscious person taught to all Louisiana law enforcement officers. The deputies asked Callaway to put her own pants on, and then assisted her in putting her pants on after she did not do so. A Louisiana state trooper subsequently arrived and attempted to conduct a field sobriety test on Callaway, but she was unable to even participate in the test. The state trooper

then arrested Callaway. ***Callaway has no memory of any of these events.*** The incident is shown on dashboard camera video.

As discussed below, the evidence shows there was probable cause to arrest Callaway for multiple crimes. Moreover, the actions of the deputies in performing a sternum rub and helping Callaway put her pants on were reasonable under the circumstances, and did not violate any right, much less any "clearly established" right. All Defendants are entitled to qualified immunity.

## II.    FACTUAL BACKGROUND

On October 10, 2018, a Wednesday, Callaway was at her boyfriend Brandon Moton's ("Moton") house in Mansfield, Louisiana. She had at least some alcohol while there, most likely peach vodka that she had on hand at his house. At some point when it was dark outside, she and Moton got into an argument. Callaway left Moton's house, driving a white Toyota Corolla. She went to Rick's Liquor in Mansfield, where she had previously been employed. [Ex. 3 (Callaway Depo.) at 88:7-95:4, 103:5-104:8, and 106:13].

Rick's Liquor is located on Highway 84 on the west side of Mansfield. It contains both a liquor store and a bar, all under one roof, in a single room. At Rick's Liquor, patrons have two options: (1) purchase alcoholic beverages and take them off premises to consume them; or (2) purchase alcoholic beverages and have bartenders serve the drinks to them, apparently with the option to take any opened but not yet empty bottles of liquor with them when they go. That night, Callaway purchased peach vodka, peach Nehi (a peach soda she mixed with the peach vodka), and Bud Light. At the time, the only types of vodka she drank were CIROC and New Amsterdam brands. She then consumed some of the beverages that she bought on the premises while sitting at the bar at Rick's (both the beer and the vodka). [Ex. 3 (Callaway Depo.) at 95:5-103:16 and 109:11-112:24].

2

Callaway does not specifically recall anyone she spoke to at Rick's Liquor. When she was ready to leave, she spoke to a friend of Moton's whose name she does not remember about potentially driving her home because she "had consumed alcohol, and [she] didn't need to drive." At the time, she was living with her parents in Joaquin, Texas, located just across the state border west of Mansfield on Highway 84. This is the last memory she has of that night. She does not recall anything about the incident at issue in this case. The next thing she remembers is waking up at the DeSoto Parish jail without any idea of how she got there. [Ex. 3 (Callaway Depo.) at 97:21-98:9, 107:2-6, 108:13-20, 109:14-111:8, and 112:25-116:10].[1]

In the early morning hours of October 11, 2018, Henderson and Thomas were dispatched in response to a complaint of a vehicle parked in U.S. Highway 84 west of Mansfield. They arrived to find a white Toyota Corolla parked in the middle of the westbound travel lane on a bridge Henderson described the location at which the vehicle was found as "rural country." The vehicle was running, and the passenger side door was open. A white female (Callaway) was inside the car on the passenger's side with no clothing on from her waist down. The deputies looked around the area and into the vehicle using flashlights to see if there was someone else there, but there was not. It appeared that she had urinated next to the vehicle. Callaway did not respond to the deputies' verbal attempts to awaken her or to pats on her back by Thomas. The deputies' impression of Callaway was that she was drunk. Thomas called dispatch to get a Louisiana State Trooper en route to their location to investigate a possible "98," or driver under the influence. [Ex. 1 (Video) at 0:00:00-0:02:20; Ex. 5 (Henderson Depo.) at 14:14-18:15, 36:23-37:18, 46:21-47:8, and 131:18-132:25; Ex. 6 (Thomas Depo.) at 17:2-18:22 and 42:11-16].

---

[1] Because Callaway has no memory of the incident at issue in this case, she ***cannot*** contradict either the dashboard camera video of the incident or the testimony of Henderson and Thomas. *See* Fed. R. Evid. 602.

Henderson and Thomas checked to see if Callaway was breathing; she was. They did not observe any cuts, scrapes, bleeding, or any physical injuries on her body. They tried again to wake her up verbally and via more pats to Callaway's back and shaking of her shoulders by Thomas, with no success. Henderson and Thomas both put gloves on. Thomas picked up Callaway's pants off the floorboard of the passenger side and began turning them from inside-out to the proper configuration, and he noted that her pants were wet. Thomas noted that Callaway's shoes were located on the driver's side floorboard. Once Thomas had Callaway's pants configured correctly, he put them around her feet and ankles. Thomas performed a "sternum rub" on Callaway to wake her up. She woke up, and mumbled or growled something. Thomas could smell alcohol on her breath. Callaway went back to sleep. Thomas performed another sternum rub to awaken her, and she became responsive. [Ex. 1 (Video) at 0:02:21-0:04:50; Ex. 5 (Henderson Depo.) at 14:14-18:15, 20:9-24, 21:24-26:4, and 125:9-126:6; Ex. 6 (Thomas Depo.) at 17:2-18:22 and 42:11-16].

A sternum rub is a technique that is taught to all Louisiana law enforcement officers as part of their basic or "police academy" training to become certified as peace officers by the Council on Peace Officer Standards and Training ("POST"). [La. R.S. 40:2404.2; Ex. 5 (Henderson Depo.) at 10:7-15, 14:5-19, and 24:14-26:4; Ex. 6 (Thomas Depo.) at 15:24-16:11 and 45:2-8]. The purpose of a sternum rub is to "hopefully get a response from an individual that's nonresponsive." [Ex. 5 (Henderson Depo.) at 24:14-26:4]. It is performed by making a fist and pointing one's knuckles out, then applying pressure to the subject's sternum in a rubbing motion. [Ex. 5 (Henderson Depo.) at 24:14-22; Ex. 6 (Thomas Depo.) at 18:7-19:14].[2] Thomas used this exact method as taught in the police academy on Callaway. [*See* Ex. 5 (Henderson Depo.) at 29:12-24].

---

[2] As the Fifth Circuit has recognized, "A sternum rub is the application of painful stimulus with the knuckles of closed fist to the center chest of a patient who is not alert and not respond to verbal stimuli." *Aguirre v. City of San Antonio*, 995 F.3d 395, 404 n.2 (5th Cir. 2021).

4

Henderson asked Callaway if she was alright, and she said she was. Henderson and Thomas asked Callaway to stand up and pull her clothes up, but she did not do so. Thomas then helped Callaway stand up by holding up her arms, while Henderson quickly pulled Callaway's pants up for her so that she would no longer be half-naked in the middle of a U.S. highway with other drivers passing by. They then sat her back down in the vehicle. [*See* Ex. 1 (Video) at 0:04:50-0:05:35; Ex. 5 (Henderson Depo). at 45:8-49:21; Ex. 6 (Thomas Depo.) at 36:20-40:5].

Thomas and Henderson got Callaway's name and identification. They asked her several questions. Thomas asked her why her clothes had been off. She answered, "clothes?", apparently unaware that she had been naked from the waist down. She stated that there had been no one else in the vehicle with her that night. Henderson asked her whether she had anything to drink that night. Callaway lied and said she had not. [Ex. 1 (Video) at 0:05:35-0:07:55; Ex. 3 (Callaway Depo.) at 113:12-114:16; Ex. 5 (Henderson Depo.) at 57:25-58:17; Ex. 6 (Thomas Depo.) at 36:20-40:5]. Thomas and Henderson asked Callaway several more questions. Her responses were somewhat coherent, but her speech was obviously slurred. Thomas and Henderson awaited the arrival of a Louisiana State Trooper to continue the investigation into whether Callaway was under the influence of alcohol. [Ex. 1 (Video) at 0:07:55-0:22:47].

Thomas asked Callaway if she minded if he and Henderson searched her car, and she said, "No sir, I don't care." [Ex. 1 (Video) at 0:22:48-0:23:05; Ex. 5 (Henderson Depo.) at 77:24-78:15; Ex. 6 (Thomas Depo.) at 49:22-50:22]. Henderson and Thomas searched the car, and pulled out an opened case of beer, a large white Styrofoam cup with some liquid in it, a New Amsterdam Peach 750 milliliter bottle of peach vodka, and a CIROC Peach 375-milliliter bottle of vodka. [Ex. 1 (Video) at 0:23:05-0:30:07; Ex. 5 (Henderson Depo.) at 41:1-44:25].

Louisiana State Trooper Matthew Speir ("Trooper Speir") arrived on the scene. Thomas explained to Trooper Speir what had occurred up to that point. Thomas retrieved Callaway's shoes from the driver's side floorboard of the vehicle and Callaway put them on. Trooper Speir took custody of Callaway. Thomas moved Callaway's vehicle off the bridge and to the shoulder. Henderson moved Thomas's vehicle to the shoulder. [Ex. 1 (Video) at 0:30:08-0:35:00].

Trooper Speir attempted to perform a field sobriety test on Callaway. She repeatedly stated during this process that she could not breathe. Trooper Speir repeatedly asked her if she needed an ambulance, but she declined. Callaway was unable to complete the field sobriety test. Trooper Speir placed her under arrest and read *Miranda* warnings to her. Trooper Speir called Callaway's father to come pick up Callaway's car. [Ex. 1 (Video) at 0:35:00-0:49:53; Ex. 7 (Speir Video) at 0:00:00-0:13:32].[3] Trooper Speir then took Callaway to the DeSoto Parish Jail. [Ex. 7 (Speir Video) at 0:13:33-0:32:25].

### III.    CALLAWAY'S CLAIMS

Callaway sued Henderson, Thomas, and Richardson in both their individual and official capacities. [*See* Doc. 1 at ¶ 3]. Callaway asserted claims under federal and state law.  Her claims are listed as follows: (1) intentional infliction of emotional distress under Louisiana law; (2) "employer liability" under Louisiana law; (3) "denial of equal protection and illegal search of the person and vehicle of Plaintiff" under 42 U.S.C. § 1983 ("Section 1983"); (4) "deprivation of Fifth and Fourteenth Amendment liberty interest" under Section 1983; (5) "conspiracy to violate

---

[3] Trooper Speir's dash camera video was recording, but the microphone located on his person apparently was not on. The audio inside his vehicle was on, but his video does not contain audio for most of the interaction between himself and Callaway. Thomas's microphone remained on, and parts of the interaction between Trooper Speir and Callaway can be heard on the video from Thomas's unit.

constitutional rights" under Section 1983; and (6) "unconstitutional denial of equal protection and liberty interests" under Louisiana Constitution Article I, Section 3. [Doc. 1].

As discussed below, Defendants did not violate Callaway's rights under federal or state law. Callaway's action should be dismissed in its entirety.

## IV.    LAW AND ANALYSIS

*Summary Judgment Standard:* The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant raises the absence of a genuine dispute of material fact, the non-movant must go beyond the pleadings and point to specific facts to show that a genuine dispute of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Video and audio evidence is "assign[ed] greater weight, even at the summary judgment stage." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2010); *see Scott v. Harris*, 550 U.S. 372, 381 (2007).

*Adverse presumption in a civil case for refusing to answer under the Fifth Amendment:* Defendants propounded interrogatories and requests for production to Callaway in this case. These requests asked for facts, witnesses, documents, information, or other matters known to Callaway that supported her claims. In response to Defendants' interrogatories and requests for production in this case, Callaway invoked the Fifth Amendment, and did not respond to the requests for factual information. [*See* Ex. 8 (Callaway's July 29, 2020 Discovery Responses)]. Defendants are entitled to an adverse presumption against Callaway as to any and all those factual matters. *See In re Powers*, 261 Fed. Appx. 719, 723 (5th Cir. 2008).

**A.  Searches and Seizures under the Fourth Amendment.**

A law enforcement officer may lawfully stop and detain an individual when he or she has "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989), *quoting Terry v. Ohio*, 392 U.S. 1, 30 (1968). A law enforcement officer may make a warrantless arrest when he or she has probable cause. *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018).

Probable cause in an objective standard, and it "is not a high bar." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). "Probable cause" is defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person . . . in believing . . . that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Law enforcement officers are permitted to make "common-sense conclusions about human behavior," and such conclusions can support probable cause to arrest. *Wesby*, 138 S. Ct. at 587. When officers do so, courts must consider "the totality of the circumstances" and cannot deny officers qualified immunity on false arrest claims when the officer could have made an "entirely reasonable inference" regarding probable cause to arrest. *Id.* at 586. Courts "will find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Club Retro, LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009).

"[A]n officer's mere observation of an item left in plain view . . . generally involves no Fourth Amendment search." *Horton v. California*, 496 U.S. 128, 133 n.5 (1990). Use of a flashlight to illuminate the interior of a vehicle during a traffic stop does not constitute a search. *Texas v. Brown*, 460 U.S. 730, 739-740 (1983). "Under the automobile exception [to the Fourth Amendment's warrant requirement], police may stop and search a vehicle without obtaining a

warrant if they have probable cause to believe it contains contraband." *United States v. Beene*, 818 F.3d 157, 164 (5th Cir. 2016).

Callaway's Complaint does not clearly set forth a claim that her Fourth Amendment rights were violated by being falsely detained or falsely arrested. Instead, the Complaint asserts claims based on the deprivation of her purported "Fifth and Fourteenth Amendment Liberty Interest" and the "terminat[ion of] her liberty interest." [Doc. 1 at 14-15, ¶ 50]. The Complaint also alleges that Defendants' actions violated her "right not to be arrested," which Callaway purports to arise out of "liberty interests protected by the Fifth and Fourteenth Amendments to the U.S. Constitution." [Doc. 1 at 14-15, ¶ 47]. However, all federal constitutional claims for false detentions or arrests are analyzed under the Fourth Amendment, not any other constitutional provision. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment . . . must be the guide for analyzing these claims."); *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (*en banc*) ("we must insist on clarity in the identity of the constitutional violations asserted").

### B. Qualified Immunity

Law enforcement officers are immune from liability and suit in the absence of clearly established law demonstrating to every reasonable officer that his actions are improper under the circumstances. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). To overcome a qualified immunity defense, a plaintiff must (1) show enough facts to make out a violation of a constitutional right and (2) show that the right was "clearly established" at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). When an arrest occurs, qualified immunity protects the officer if there is "arguably" probable cause because "qualified immunity gives ample

room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001) (internal quotations omitted).

### C. There was probable cause to arrest Callaway for several crimes.

Henderson and Thomas did not violate the Fourth Amendment because there was probable cause to arrest Callaway for several crimes, as set forth in subsections (i)-(iv) below. Alternatively, at minimum, they had "arguable" probable cause to arrest Callaway for many crimes, and qualified immunity applies. Alternatively, at minimum, they had reasonable suspicion to detain Callaway for these crimes.

    *i.    Obstructing public passages and Simple Obstruction of a Highway:*  La. R.S. § 14:100.1 makes it a crime to "willfully obstruct the free, convenient, and normal use of any public . . . street . . . road, or other passageway . . . by impeding, hindering, stifling, retarding, or restraining traffic or passage thereon or therein." La. R.S. § 14:97 makes the following a crime: "the intentional or criminally negligent placing of anything or performance of any act on . . . road, highway, [or] thoroughfare . . . which will render movement thereon more difficult."

The deputies had probable cause to arrest Callaway for both of these crimes from the moment they arrived at the scene of this incident. Callaway's vehicle was parked in the middle of the westbound travel lane of the highway on a bridge. Callaway was the only person in the area. After she woke up, she stated that she was the only person there. Her shoes were located on the driver's side floorboard of the vehicle. Callaway herself admits that a vehicle parked in one of the travel lanes of a highway at night on a bridge poses a risk of harm to both other drivers and to any unconscious persons in that vehicle. [Ex. 3 (Callaway Depo.) at 179:3-13].

    *ii.    Public nudity and Obscenity:*  DeSoto Parish Code of Ordinances § 54-2 makes it a crime "for any person in any public place or in view of the public, to be found in a state of nudity,

or partial nudity, or in any indecent exposure of his or her person."[4] La. R.S. § 14:106(A)(1) makes "the intentional exposure of the genitals, pubic hair, anus, [or] vulva . . . in any public place or place open to the public view . . . which . . . is patently offensive."

There was probable cause to arrest Callaway for both of these crimes from the moment the deputies saw Callaway. Callaway was in her vehicle parked in the middle of the westbound travel lane of the highway, a public place. She was naked from the waist down. [Ex. 5 (Henderson Depo.) at 23:12-24]. Occupants of vehicles passing by, especially 18-wheelers that sit high off the ground, could look into Callaway's vehicle and see her as they passed by. [Ex. 6 (Thomas Depo.) at 116:4-117:3]. Henderson described Callaway's condition as "unpleasant" to see. [Ex. 5 (Henderson Depo.) at 46:3-7, 49:12-18, 74:4-10, and 114:8-19].

iii.    *Operating a vehicle while intoxicated:*    La. R.S. § 14:98(A)(1)(a) makes the following a crime: "operating of any motor vehicle . . . when . . . The operator is under the influence of alcoholic beverages."

There was probable cause to arrest Callaway for this crime. Callaway's vehicle was parked in the westbound travel lane of a highway on a bridge late at night. The car was running with the keys in the ignition.  Callaway was in the passenger seat, but her shoes were on the driver's side floorboard. Two bottles of liquor, an opened case of beer, and a Styrofoam cup with liquid in it were all found in the vehicle. The deputies both smelled alcohol on her breath. She said she was on her way home, and she specifically confirmed that no one else was or had been with her. Though Callaway had no clothes on from the waist down, she was apparently unaware of this fact when she was questioned as to why her clothes were off. Callaway's own Complaint alleges that she

---

[4]https://library.municode.com/la/desoto_parish_police_jury/codes/code_of_ordinances?nodeId=COOR_CH54OFMIPR_ARTIINGE_S54-2NUPR

"was clearly under the influence of some unknown substance as evidenced by her groaning and sleepy appearance." [Doc. 1 at 3, ¶ 10].

    *iv.*    *Disturbing the Peace:*  La. R.S. § 14:103(A)(3) makes the following a crime: "Appearing in an intoxicated condition" in "such manner as would foreseeably disturb or alarm the public." As set forth above, Callaway was intoxicated when Henderson and Thomas encountered her. She was also naked from the waist down, in the middle of a U.S. highway, with cars passing by her. Henderson described Callaway's half-naked, intoxicated condition as "unpleasant" to see. [Ex. 5 (Henderson Depo.) at 46:3-7, 49:12-18, 74:4-10, and 114:8-19]. Her condition was obviously disturbing.

**D. Trooper Speir, not Henderson or Thomas, arrested Callaway.**

    As set forth above, Henderson and Thomas had probable cause to arrest Callaway for numerous crimes. But, it was Trooper Speir who actually arrested Callaway after she was unable to even participate in the field sobriety test that he attempted to perform. [*See* Ex. 1 (Video); *see* Ex. 2 at DEF 2; Ex. 7 (Speir Video) at 0:00:00-0:13:32]. Henderson and Thomas merely detained Callaway until Trooper Speir arrived. [*See* Ex. 5 (Henderson Depo.) at 53:9-54:15; *see* Ex. 6 (Thomas Depo.) at 52:1-6]. Thus, even if there were not probable cause to arrest Callaway for a crime (and there was), Henderson and Thomas could not be held liable for the arrest since they were not the officer who actually arrested her.

**E. There was no illegal search.**

    Henderson and Thomas looked into Callaway's vehicle with the aid of flashlights. [Ex. 5 (Henderson Depo.) at 118:15-121:21; Ex. 6 (Thomas Depo.) at 57:2-60:13]. They were able to observe liquid on the pavement by the (open) passenger door, a pair of shoes on the driver's side floorboard, the keys in the ignition with the car running. [Ex. 5 (Henderson Depo.) at 57:25-58:17,

119:4-120:3, and 131:18-132:16; Ex. 6 (Thomas Depo.) at 72:22-23]. They also could smell alcohol on Callaway's breath. [Ex. 5 (Henderson Depo.) at 47:9-48:4; Ex. 6 (Thomas Depo.) at 17:2-18:6]. Henderson and Thomas's personal observations of Callaway and the interior of her vehicle using flashlights did not constitute a "search" at all, because what they observed was in plain view. *Horton*, 496 U.S. at 133 n.5; *Brown*, 460 U.S. at 739-740.

Later, after Callaway was awake, Thomas asked her if she minded if they searched her car, and she said, "No sir, I don't care." [Ex. 1 (Video) at 0:22:48-0:23:05; Ex. 5 (Henderson Depo.) at 77:24-78:15; Ex. 6 (Thomas Depo.) at 49:22-50:22]. This is a clear expression of Callaway's consent to search the vehicle, which she voluntarily and freely gave while she was unrestrained and seated in the passenger seat of her own car. *See United States v. Perales*, 886 F.3d 542, 545-548 (5th Cir. 2018). Thus, Henderson and Thomas conducted a consent search of Callaway's vehicle, which does not violate the Fourth Amendment. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Their conduct did not violate any clearly established law.

Even if Henderson and Thomas had not obtained Callaway's consent to search the vehicle, their search of the vehicle would not have violated the Fourth Amendment under the automobile exception to the Fourth Amendment's search warrant requirement. Under the automobile exception, "police may stop and search a vehicle without obtaining a warrant if they have probable cause to believe it contains contraband." *Beene*, 818 F.3d at 164. Based on the deputies' personal observations of and interactions with Callaway, they had probable cause to believe that her vehicle contained contraband. Thus, even if they had not obtained Callaway's consent to search her vehicle, they would not have violated the Fourth Amendment.

13

**F.  Use of force under the Fourth Amendment.**

To prove an excessive force claim, a plaintiff must show: "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable" under the objective standard for evaluating the use of force. *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012).

"To make out a Fourth Amendment violation, let alone one that violates clearly established law, the question is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012). The analysis of whether the officer violated the plaintiff's rights requires "careful attention to the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Use of force must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Factors in determining whether the force an officer used was reasonable are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *See id.*

*i.  The deputies did not use excessive force.*  As with Callaway's allegations of false arrest, it is not clear from Callaway's Complaint that she is asserting an excessive force claim under the Fourth Amendment. Instead, she asserts claims that Henderson engaged in "the unwanted touching of the nude area below her waist" and that Thomas engaged in "the unwanted touching her breast area and of the nude area below her waist." [Doc. 1 at 11, ¶¶ 33-36]. Callaway pleads these claims as Fourteenth Amendment equal protection and due process claims. But, these claims relate to the physical handling of a detainee during her initial detention. Thus, these claims must be analyzed under the Fourth Amendment, the "explicit textual source of constitutional protection" against

14

unreasonable searches or seizures of one's person. *Albright*, 510 U.S. at 273; *Graham*, 490 U.S. at 395; *Castellano*, 352 F.3d at 945.

Henderson and Thomas's actions did not violate Callaway's Fourth Amendment rights. Thomas performed two sternum rubs on Callaway after he and Henderson were unable to awaken her by other means. As both deputies testified, a sternum rub is a technique that is taught to all Louisiana law enforcement officers as part of their basic or "police academy" training to become POST-certified. The purpose of a sternum rub is to try to get a response from an unresponsive person. It is performed by making a fist and pointing one's knuckles out, then applying pressure to the subject's sternum in a rubbing motion. *See Aguirre*, 995 F.3d at 404 n.2.

Callaway was not responsive to the deputies' efforts to awaken her by other means. Though she was breathing, if she did not respond to the sternum rub, she might have needed medical attention. At the time, the deputies were the only persons present on the scene at this relatively remote location out in the country. This was a textbook situation for employing a sternum rub to try to awaken Callaway as quickly as possible. Thomas did not violate Callaway's Fourth Amendment rights by performing a sternum rub on her. *See Stewart v. Cain*, 2013 WL 634578 at *4-5 (M.D. La. 2013) (granting summary judgment in favor of corrections officer in inmate's Eighth Amendment excessive force claim based on corrections officer's performance of multiple sternum rubs on the nonresponsive inmate after the inmate had attempted suicide).

The deputies also did not violate Callaway's Fourth Amendment rights by helping her put her pants back on so that she would no longer be half-naked in the middle of a U.S. highway. Callaway was naked from the waist down when the deputies arrived on the scene. Thomas put Callaway's pants back on her feet and ankles. Henderson and Thomas then asked Callaway to get up on her own and pull her pants up. She did not do so. Then, Thomas held Callaway's arms up to

stand her up while Henderson pulled her pants up for her. It was reasonable under the circumstances to help a half-naked woman put her pants back on so that she would not suffer the humiliation of being half-naked in the middle of a U.S. highway. It was also reasonable under the circumstances to do so because, in doing so, the deputies were stopping Callaway's ongoing violation of two criminal statutes, DeSoto Parish Code of Ordinances § 54-2 (public nudity) and La. R.S. § 14:106(A)(1) (obscenity). Finally, performing two sternum rubs to wake Callaway up and helping her put her pants on so that she would no longer be half-naked did not violate clearly established law, entitling Henderson and Thomas to qualified immunity.

**G.  All claims against Sheriff Richardson should be dismissed.**

*Individual Capacity claims:*  Callaway asserts claims against Sheriff Richardson in his individual and official capacities. [*See* Doc. 1 at 2, ¶ 3(a)]. Sheriff Richardson was not present at the scene of this incident. The only people present at the scene of this incident were Callaway, Henderson, Thomas, and (later) Trooper Speir. Sheriff Richardson had no personal involvement in the events at issue. [Ex. 6 (Thomas Depo.) at 36:17-19]. All individual capacity claims against him should be dismissed.

*Monell/Official Capacity Claims:* "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

Callaway's allegations against Sheriff Richardson in his official capacity are conclusory. Callaway alleges that Sheriff Richardson:

> "has maintained the unconstitutional policies which permitted the violation of Plaintiff Davis's rights to equal protection, as secured to her under the Fourteenth Amendment to the U.S. Constitution, by allowing both said Defendant deputies to abuse their authority and influence as a law enforcement officers (sic) for purposes

of sexual gratification against Plaintiff Davis who neither consented to the unwanted touching of the nude areas below her waist nor had the capacity to consent to the unwanted touching of the nude area below her waist." [Doc. 1 at 13, ¶ 41].

All of Callaway's allegations against Sheriff Richardson in his official capacity for each of her claims of rights violations are nearly identical to the above-quoted conclusory allegation. [*See* Doc. 1 at 13-14, ¶¶ 42-43; 16-17 at ¶¶ 55-56; 18 at ¶62].

Callaway's allegations fail to identify any unconstitutional policy or practice of Sheriff Richardson. Callaway has no evidence of any unconstitutional policy or practice of Sheriff Richardson. Additionally, proof of past similar incidents that put a government entity on notice of a need to change its policies or procedures, plus proof that the government entity failed to address the need to change its policies and procedures after becoming aware of such incidents, is generally required to succeed on a *Monell* claim. *See Peterson*, 588 F.3d 838, 847; *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 382-383 (5th Cir. 2005); *see Anokwuru v. City of Houston*, 990 F.3d 956, 965-966 (5th Cir. 2021). Callaway has no evidence of any such past incidents.

Finally, as explained above, no constitutional right was ever violated during this incident. Thus, Callaway cannot meet the third essential element of her *Monell* claims, which require proof of a constitutional violation. There is no genuine dispute of material fact as to that element of Callaway's *Monell* claims. Accordingly, Callaway's *Monell* claims should be dismissed.[5]

---

[5] Callaway asserted all claims against Henderson and Thomas in both their individual and official capacities. However, Sheriff Richardson in his official capacity is the proper party to sue to assert an official capacity claim, because he is the policy maker for the DeSoto Sheriff. *See Coley v. Boyett*, 2019 WL 5483440 at *8 (W.D. La. 2019) (Foote, J.); *Adams v. City of Shreveport*, 269 F. Supp. 3d 743, 753 (W.D. La. 2017); *Burge v. Par. of St. Tammany*, 187 F.3d 452, 469 (5th Cir. 1999). All official capacity claims against Henderson and Thomas should be dismissed.

### H. **Plaintiff's "Other" Claims Have No Merit and Should Be Dismissed.**

*i. Equal Protection:* As stated above, Callaway's claims for the "force" used on her by the deputies are properly analyzed under the Fourth Amendment and not under the Fourteenth Amendment's equal protection provision. Regardless, though, her claims also fail under an equal protection analysis. "Generally, to state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that [(1) she] received treatment different from that received by similarly situated individuals and that [(2)] the unequal treatment stemmed from a discriminatory intent." *Cook v. Hopkins*, 795 Fed. Appx. 906, 914 (5th Cir. 2019) (internal quotations omitted). The plaintiff must prove membership in a protected class, and that the "unequal treatment" was the result of "discriminatory intent" toward that protected class. *See id.*; *see Gibson v. Tex. Dept. of Ins.—Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012). Callaway claims that Henderson and Thomas denied her equal protection because she is female.

As to the first element, Callaway did not receive treatment different from the treatment that similarly situated individuals, whether male or female, would have received. Henderson and Thomas both testified that a sternum rub is a technique taught to all Louisiana law enforcement officers as part of their basic training. A sternum rub is used to attempt to awaken an unresponsive individual like Callaway, regardless of that individual's gender. In Henderson's words, "In police academy training we were trained to use the sternum rub on any individual, whether male, female, or child, just to get a – to try and hope to get a response out of them." [Ex. 5 (Henderson Depo.) at 25:15-23]. Callaway was asked to put her own pants back on, but she did not do so. The deputies then helped put her pants on her, thereby (1) saving her from the humiliation of being seen half-naked by occupants of passing vehicles and (2) ending her ongoing violation of DeSoto Parish

Code of Ordinances § 54-2 and La. R.S. § 14:106(A)(1). Callaway cannot show that she was treated differently than any other person would have been treated under the circumstances.

As to the second element, there is no evidence whatsoever that Henderson and Thomas's actions with respect to Callaway were taken with "a discriminatory intent." The deputies' intent with respect to Callaway was to (1) help her and (2) investigate the crimes that she appeared to have committed. [Ex. 5 (Henderson Depo.) at 74:4-10, 88:11-17, and 124:12-126:23; Ex. 6 (Thomas Depo.) at 17:2-18:6 and 27:19-28:7]. Callaway's allegation that Henderson and Thomas's actions were taken for the purpose of "sexual gratification" are totally false and not supported by any evidence. [Doc. 1 at 11, ¶ 33]. To the contrary, Thomas testified that he did not touch Callaway's breasts when he performed the sternum rubs on her. [Ex. 6 (Thomas Depo.) at 18:20-22]. Henderson described Callaway's condition as "unpleasant" to see, and said he "can't unsee that." [Ex. 5 (Henderson Depo.) at 46:3-7, 49:12-18, 74:4-10, and 114:8-19]. No reasonable trier of fact could watch the video of this incident and listen to Henderson and Thomas's testimony and conclude that they took the actions they took for purposes of "sexual gratification."

Finally, it was not "clearly established" that Henderson and Thomas's actions would violate any of Callaway's constitutional rights under these circumstances. They are entitled to qualified immunity.

*ii. Medical Attention:* Callaway's Complaint alleges that Henderson and Thomas exhibited "signs of apparent deliberate disregard for [Callway's] medical condition." [Doc. 1 at 3, ¶ 8]. It is unclear whether this allegation is intended to allege a Fourteenth Amendment claim for inadequate medical care, but if such a claim has been raised, it must be dismissed. "Law enforcement officials violate an arrestee's Fourteenth Amendment due process rights when they have subjective knowledge of a substantial risk of serious harm to a pretrial detainee but respond with deliberate

indifference to that risk. Negligence or even gross negligence is not enough: the officials must have had actual knowledge of the substantial risk." *Aguirre*, 995 F.3d at 420 (internal quotations omitted).

Callaway's allegations of inadequate medical care fail on all elements of this claim. First, there is no evidence that Callaway had any medical condition that constituted a "substantial risk of serious harm" to her. When Henderson and Thomas arrived at the scene, Callaway was breathing, and they did not observe any cuts, scrapes, bleeding, or any physical injuries on her body. Once Thomas woke Callaway up using the sternum rub, the only apparent medical issue Callaway had was alcohol intoxication. She was able to answer the deputies' questions, albeit with slurred speech. She was asked if she was ok, and she said she was. [Ex. 5 (Henderson Depo.) at 17:22-18:4 and 20:9-23:24; Ex. 6 (Thomas Depo.) at 27:23-29:17]. For these same reasons, Henderson and Thomas clearly were not subjectively aware of any serious medical issue affecting Callaway. To the contrary, they perceived her only problem to be alcohol intoxication after she was successfully awoken.

Furthermore, the deputies did not respond with deliberate indifference to any medical issues Callaway may have had. In fact, as they both testified, the purpose of a sternum rub is to try to obtain a response from a nonresponsive individual. Thomas used the sternum rub to awaken Callaway, after which she became responsive to the deputies' questions and stated she did not need help. Thus, the evidence shows that neither Thomas nor Henderson were deliberately indifferent to any medical needs of Callaway. Finally, Henderson and Thomas's actions did not violate clearly established law, entitling them to qualified immunity.

*iii. Fifth Amendment:* Callaway claims that Henderson and Thomas conducted an "illegal questioning" of her "in violation of her Miranda rights." [Doc. 1 at 13, ¶ 40].[6] "Statements compelled by police interrogations of course may not be used against a defendant at trial, but it is not until their use in a criminal case that a violation of the Self–Incrimination Clause occurs." *Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (internal citations omitted). "The privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants. Although conduct by law enforcement officials prior to trial may ultimately impair that right, a constitutional violation occurs only at trial." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990) (internal citations omitted).

Henderson and Thomas merely detained and did not arrest Callaway, so she was never entitled to receive *Miranda* warnings. Plus, the deputies' questioning of Callaway was not coercive. But, even if Callaway was entitled to *Miranda* warnings and the questioning was coercive, Callaway's Fifth Amendment rights were never violated because she never had a criminal trial with respect to the events at issue in this case at all, much less a criminal trial at which her statements were used against her to attempt to prove she was guilty of a crime. [Ex. 3 (Callaway Depo.) at 147:4-11]. Additionally, Henderson and Thomas's actions did not violate clearly established law, and they are therefore entitled to qualified immunity.

Finally, Trooper Speir did read Callaway her *Miranda* warnings. [Ex. 5 (Henderson Depo.) at 77:17-23].

---

[6] The right to *Miranda* warnings only arises in the context of "custodial interrogations." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* "[A] Fourth Amendment seizure does not necessarily render a person in custody for purposes of *Miranda*." *United States v. Bengivenga*, 845 F.2d 593, 598 (5th Cir. 1988). "For example, traffic stops—stops which constitute a Fourth Amendment seizure—do not automatically place a person in custody for purposes of *Miranda*." *Id.* "[C]ustody arises only if the restraint on freedom is a certain degree—the degree associated with formal arrest." *Id.*

*iv. Conspiracy:* "[T] to succeed on a § 1983 conspiracy claim, a plaintiff must show: 1) an agreement between the alleged conspirators to commit an illegal act, and 2) an actual deprivation of constitutional rights." *Navarro v. City of San Juan, Tex.*, 624 Fed. Appx. 174, 179 (5th Cir. 2015). Callaway's claims fail on both elements. As explained herein, no Defendant violated any of Callaway's constitutional rights, so Callaway cannot establish the second element of her conspiracy claim. Additionally, there is no evidence of any "agreement between" Defendants to violate any of Callaway's rights, so Callaway cannot establish the first element of this claim.

*v. Louisiana Constitution:* Callaway attempts to assert claims under La. Const. Art. I, § 3 against all Defendants. [Doc. 1 at 18-19, ¶¶ 65-68]. Callaway claims that Defendants violated her "rights to Equal Protection and the termination of her liberty interests by her arrest" under La. Const. Art. I, § 3. [*Id.* at ¶ 66]. La. Const. Art. I, § 3 states, in pertinent part, as follows: "No person shall be denied the equal protection of the laws . . . No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of . . . sex."

Louisiana courts interpret Louisiana constitutional provisions in the same way as similarly worded federal constitutional provisions, and Louisiana grants qualified immunity to government officials for state constitutional claims to the same extent they have qualified immunity under federal law.[7] Callaway's state constitutional claims should be dismissed for the same reasons as her federal constitutional claims.

*vi. Intentional Infliction of Emotional Distress under State Law:* "In order to recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the conduct of the defendant was extreme and outrageous, (2) the emotional distress suffered by the plaintiff was severe, and (3) the defendant desired to inflict severe emotional distress or knew that

---

[7] *See Moresi v. State*, 567 So. 2d 1081, 1092-1093 (La. 1990); *see Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005).

severe emotional distress would be certain or substantially certain to result from his or her conduct." *Quinlan v. Sugar-Gold*, 51,191 (La. App. 2 Cir. 4/5/2017); 219 So. 3d 1173, 1185. "Conduct is considered extreme and outrageous when it goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." *Id.* (internal quotations and citations omitted).

Henderson and Thomas's conduct in this case was far from "utterly intolerable in a civilized community." *Id.* First, Thomas woke Callaway up using a sternum rub after he and Henderson had been unable to awaken her by other means. A sternum rub is a technique taught to all Louisiana law enforcement officers for use in precisely these circumstances, *i.e.*, when officers encounter an unresponsive person whom they cannot awaken by other means. Then, the deputies helped put Callaway's pants on because (1) she was naked from the waist down and (2) though they asked her to do it herself, she failed to do so. These actions are not "utterly intolerable in a civilized community;" to the contrary, they are exactly what the community would expect of law enforcement officers confronted with the circumstances at issue in this case.

Furthermore, there is no evidence that Henderson or Thomas "desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result" from their conduct. They were doing their jobs as law enforcement officers who had been called to the scene of a vehicle parked in the middle of a U.S. highway and had been forced to deal with the bizarre, "unpleasant" scene of a half-naked, intoxicated woman passed out in the middle of that highway. [Ex. 5 (Henderson Depo.) at 46:3-7, 49:12-18, 74:4-10, and 114:8-19]. As Henderson and Thomas both testified, their actions were taken out of concern for Callaway's

welfare, and were reasonable. [Ex. 5 (Henderson Depo.) at 74:4-10, 88:11-17, and 124:12-126:23; Ex. 6 (Thomas Depo.) at 17:2-18:6 and 27:19-28:7].

Finally, Henderson and Thomas are entitled to discretionary acts immunity with respect to the actions they took during this incident under La. R.S. § 9:2798.1. Their actions were "discretionary acts" taken "within the course and scope of their lawful powers and duties." La. R.S. § 9:2798.1(B); *see* La. Code Crim. P. Art. 213(A); *see* La. Code Crim. P. Art. 220. Callaway cannot overcome this immunity.

*vii. Employer Liability:*  Callaway asserts an "Employer Liability" claim against Sheriff Richardson, seeking to hold him liable for the actions of Henderson and Thomas. [Doc. 1 at 9-10, ¶¶ 32-36]. An assertion of vicarious liability is "not a cause of action, but rather a method of holding one party liable for the conduct of another." *Dennis v. Collins*, 2018 WL 6637973 at *5 (W.D. La. 2016). Because Henderson and Thomas did not violate Callaway's rights or commit any torts against her, Sheriff Richardson is not vicariously liable for any of their actions. Furthermore, to the extent Callaway seeks to hold Sheriff Richardson vicariously liable for any alleged constitutional violations under Section 1983, such an attempt must fail because there is no vicarious liability under Section 1983. *See Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

*viii. DeSoto Parish Sheriff's Department:*  Callaway asserts claims against the "DeSoto Parish Sheriff's Department." [Doc. 1 at 2, ¶ 3(e)]. "It is well settled in the lower courts that a Sheriff's Department is not a legal entity capable of being sued." *Valentine v. Bonneville Ins. Co.*, 96-1382 (La. 3/17/1997); 691 So. 2d 665, 668; *see Carter v. Sheriff's Office Calcasieu Par.*, 2014 WL 235284 at *2 (W.D. La. 2014). All claims against the "DeSoto Parish Sheriff's Department" must be dismissed.

## IV.  CONCLUSION

No Defendant ever violated any constitutional right. All Defendants are entitled to qualified immunity. No Defendant committed any tort. All of Callaway's claims should be dismissed.

COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation

By: /s/ James Ashby Davis_____
   James R. Sterritt, #18447
   Gregg A. Wilkes, #20419
   James Ashby Davis, #37653

333 Texas Avenue, Suite 1700
Post Office Box 22260
Shreveport, Louisiana 71120-2260
Telephone:  (318) 221-6277
Telecopier:  (318) 227-7850
james.sterritt@cookyancey.com
gregg.wilkes@cookyancey.com
ashby.davis@cookyancey.com
ATTORNEYS FOR DEFENDANTS,
DESOTO PARISH SHERIFF JAYSON
RICHARDSON, CHRISTOPHER THOMAS, AND
JEFFERY HENDERSON, JR.

## CERTIFICATE

I HEREBY CERTIFY that a copy of the above and foregoing has been served on all counsel of record by filing with the Court's CM/ECF system, facsimile, e-mail and/or placing a copy of same in the United States Mail, properly addressed and with adequate postage affixed thereon.

Shreveport, Louisiana, this 19th day of September, 2021.

    /s/ James Ashby Davis_____
   Of Counsel