UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| HANNAH DAVIS | CIVIL ACTION NO. 19-1330 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| SHERIFFS DEPT. DESOTO PARISH, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Responding to a complaint of a parked car on a public highway, Defendant Deputies Christopher Thomas ("Deputy Thomas") and Jeffery Henderson ("Deputy Henderson") (collectively, "Deputies") discovered Plaintiff Hannah Davis ("Davis") in the passenger seat of a running vehicle; she was passed out and naked from the waist down. Once the Deputies arrived at the scene, Davis argues their ensuing conduct violated her constitutional rights. She filed this action against the Deputies, the Desoto Parish Sheriff, Jayson Richardson ("Sheriff Richardson"), and the Desoto Parish Sheriff's Department ("Department") (collectively, "Defendants").[1] Defendants now move for summary judgment.[2] For the reasons that follow, Defendants' motion is **GRANTED**.

## Background

Deputies Thomas and Henderson were dispatched to Highway 84 in Desoto Parish after the Department received a report of a parked sedan in the middle of a bridge.[3] The

---

[1] Sheriff Jayson Richardson and Deputies Thomas and Henderson are sued in their official and individual capacities.
[2] Record Document 20.
[3] Record Document 20-2, p. 7.

car's engine was running, and the passenger side door was left wide open.[4] Dash camera footage shows the Deputies arriving at the scene, exiting their squad car, and investigating the area.[5] They approached the sedan and discovered Davis propped against the passenger seat, asleep and nude from her waist down.[6] Though Davis was breathing, she was unresponsive and snoring; she did not acknowledge the Deputies' verbal commands to wake and dress herself.[7] Deputy Thomas requested that the Department dispatch a State Trooper to investigate whether Davis was driving under the influence.[8] After the call, the Deputies began searching for Davis's missing clothes.[9]

On the pavement underneath the sedan, Deputy Thomas observed what appeared to be a pool of urine with a pair of damp pants close by.[10] Deputy Thomas collected the pants and placed them around Davis's feet and pulled them just over her ankles.[11] He then began shaking Davis to rouse a response.[12] Noting Davis's continued unresponsiveness, Deputy Thomas performed a "sternum rub" in the center of Davis's chest.[13] A sternum rub is a maneuver used to elicit a reaction from an individual who is

---

[4] Thomas Video at 1:00–32:58.
[5] Id. at 1:00–:45.
[6] Id. at 1:45; Record Document 20-4, p. 3.
[7] Thomas Video at 2:20–:53.
[8] Id. at 2:05.
[9] Id. at 2:25.
[10] Id. at 3:00.
[11] Id. at 4:15.
[12] Id.
[13] Id. at 4:24.

unconscious; it is performed by applying pressure to a person's chest and gauging their response.[14]

When Deputy Thomas first applied the sternum rub to Davis's chest, she awoke and responded with muted growls, but went back to sleep; so he performed another.[15] Soon after, Davis was awake and able to communicate through slurred speech.[16] Deputy Henderson asked Davis if she was okay; she responded that she was.[17] Deputy Thomas helped Davis stand by grabbing her hands, and Deputy Henderson pulled her damp pants over her exposed body.[18] After she was clothed, Davis sat back down in the car's passenger seat and the Deputies began their questioning.[19]

They first asked Davis for her name.[20] She gave unresponsive or inaudible answers, so the Deputies began looking through her car for identification.[21] They then asked whether she had been drinking that evening; Davis replied that she had not.[22] After observing an open container filled with an unknown liquid, Deputy Thomas asked Davis if he could search her sedan.[23] Davis consented.[24] During the search, the Deputies pulled

---

[14] "A sternum rub is the application of painful stimulus with the knuckles of closed fist to the center chest of a patient who is not alert and does not respond to verbal stimuli." Aguirre v. City of San Antonio, 995 F.3d 395, 404 (5th Cir. 2021).
[15] Thomas Video at 4:24–:40.
[16] Id. at 5:07.
[17] Id. at 6:10–7:20.
[18] Id. at 5:00–:35.
[19] Id. at 5:35.
[20] Id. at 5:35–:45.
[21] Id. at 6:00–:15.
[22] Id. at 7:30–:40. Davis later retracted this response in her deposition. She claims that she had indeed been drinking that evening. Record Document 20-3, at 9.
[23] Thomas Video at 22:50–23:01.
[24] Id. at 23:02.

3

multiple liquor bottles and a case of her beer from Davis's vehicle.[25] The Deputies remained at the scene until a State Trooper arrived to continue the investigation.[26]

When he arrived, the Trooper reviewed the situation with the Deputies and attempted to give Davis a sobriety test.[27] Davis was unable to complete the test and the State Trooper placed her under arrest.[28] The next morning, Davis woke up in the Desoto Parish Jail with no memory of the previous night.[29] Davis now brings federal claims against Defendants alleging Fourth, Fifth, Eighth, and Fourteenth Amendment violations.[30] She also brings a host of state law claims including violations of Louisiana's constitution, intentional infliction of emotional distress, and vicarious liability. Defendants argue they are entitled to summary judgment and move to dismiss all of Davis's claims.[31] Davis opposes their motion.[32]

## **Standard of Review**

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is

---

[25] Id. at 24:30–26:00.
[26] Id. at 30:50.
[27] Id. at 30:50–34:00.
[28] Louisiana State Trooper Video at 3:00.
[29] Id. at 11:45; Record Document 20-3, p. 8.
[30] See Record Document 1.
[31] Record Document 20-8, p. 6.
[32] Record Document 41.

4

entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. See id. at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the non-movant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings and designat[ing] specific facts" for support. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Celotex, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." Id. (internal citations and quotation marks omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the non-movant is so "weak or tenuous" that it could not support a judgment in the non-movant's favor. Armstrong v. City of Dall., 997 F.2d 62, 67 (5th Cir. 1993).

Local Rule 56.1 also requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's

statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Id.

## Analysis

I. Section 1983 Claims

Davis brings her federal law claims under 42 U.S.C § 1983. Section 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States against any person acting under color of state law. 42 U.S.C. § 1983. This statute does not create substantive rights but provides remedies to the rights established in the United States Constitution and other federal laws. See Graham v. Connor, 490 U.S. 386, 393–94 (1989); City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985). To assert a Section 1983 claim, Davis must show "(1) a deprivation of a right secured by federal law[,] (2) that occurred under color of state law, and (3) was caused by a state actor." Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004).

According to Davis, the Deputies—acting under the color of state law—violated her constitutional rights when they discriminated against her, searched her car without a warrant, used a sternum rub while she was unresponsive, touched her nude body without consent, and conspired to deprive her of equal protection under the law. Davis also pursues Section 1983 claims against Sheriff Richardson and the Department alleging

municipal liability. The Court will first address Davis's claims against the Deputies and then analyze Davis's remaining claims against Sheriff Richardson and the Department.[33]

a. Qualified Immunity

For their part, the Deputies claim they are entitled to qualified immunity on all of Davis's Section 1983 claims. Qualified immunity shields government officials from liability for claims against them in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The issue of qualified immunity requires the Court to make a two-part inquiry: (1) whether the facts alleged or shown by the plaintiff demonstrate a violation of a constitutional right, and (2) if a violation has been established, whether the officer's actions were objectively reasonable in light of clearly established law at the time of the alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). A court may begin its analysis of qualified immunity with either prong. Gibson v. Kilpatrick, 773 F.3d 661, 666 (5th Cir. 2014).

Because the Deputies raise qualified immunity, the burden shifts to Davis to negate the defense. Poole v. City of Shreveport, 691 F.3d 624, 627 (5th Cir. 2012). To do so,

---

[33] At the outset, the Court will dismiss Davis's claim that the Deputies violated her Eighth Amendment rights. The Eighth Amendment applies only to convicted prisoners. See Carlton v. Fearneyhough, No. 07-10676, 2008 WL 686595, at *2 (5th Cir. Mar. 12, 2008) (per curium). Similarly, Davis's claims that the Deputies deprived her of her Fifth Amendment right to due process must also fail. The due process clause of the Fifth Amendment "applies only to violations of constitutional rights by the United States or a federal actor." Jones v. City of Jackson, 203 F.3d 875, 880 (5th Cir. 2000). Davis does not allege the Deputies were acting under the authority of the federal government. The claim is therefore dismissed.

7

she must establish that "genuine issues of material fact exist regarding the reasonableness of the official's conduct." King v. Handorf, 821 F.3d 650, 654 (5th Cir. 2016) (quoting Gates v. Tex. Dep't of Protective & Regul. Servs., 537 F.3d 404, 419 (5th Cir. 2008)). This proof need not be "absolute," but it must consist of more than "mere allegations." Id. (quoting Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009)). If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact. See Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005) (citing Malley v. Briggs, 475 U.S. 335, 341 (1986) (holding that qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law")). At its core, "[t]he touchstone of this inquiry is whether a reasonable person would have believed that [an officer's] conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." Goodson v. Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000).

    b. Fourteenth Amendment—Equal Protection

To begin with, Davis first alleges the Deputies violated her constitutional right to equal protection. Discrimination claims against law enforcement officers "draw on ordinary equal protection standards." Stout v. Vincent, 717 F. App'x 468, 471 (5th Cir. 2018). To bring a Section 1983 discrimination claim under the Equal Protection Clause, Davis must show that a state actor intentionally discriminated against her because of her "membership in a protected class," or that she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Gibson v. Texas Dep't of Ins. Div. of Workers' Comp., 700 F.3d 227, 238 (5th

8

Cir. 2012) (internal quotation marks and citation omitted). Davis vaguely alleges that the officers subjected her to "sexual discrimination," but never describes how they did so.[34] In her complaint, for example, she states that the Deputies "used their authority and influence . . . for purposes of sexual discrimination against . . . Davis who neither consented to the unwanted touching of the nude area below her waist nor had the capacity to consent to the unwanted touching of the nude area below her waist."[35] In her opposition, Davis fails to allege or provide evidence that she was intentionally discriminated against or that similarly situated individuals were treated differently. Having failed to plead the essential elements of an equal protection claim or present competent summary judgment evidence, this cause of action is meritless and therefore dismissed.

    c. Fourteenth Amendment—Excessive Force

Davis next contends that the Deputies used excessive force and violated both her Fourth and Fourteenth Amendment rights. Considering the facts of this case, however, Davis's excessive force claims are best analyzed under the Fourth Amendment standard. This is because "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham, 490 U.S. at 395. Both parties agree that the alleged "excessive force" occurred while Davis was "seized" by the Deputies.[36] With this in mind, a Fourteenth Amendment due process analysis is

---

[34] Record Document 1, p. 12.
[35] Id. at 14.
[36] Record Document 20-8, p. 19; Record Document 41, p. 11.

unwarranted; thus, Davis's excessive force theory based on a Fourteenth Amendment violation is dismissed.

    d. Fourth Amendment—Excessive Force

Davis cites two specific instances where she claims the Deputies used excessive force: (1) when Deputy Thomas employed a sternum rub on her chest as she lay unresponsive; and (2) when both Deputies assisted Davis in dressing herself and simultaneously touched her exposed body. Both actions, Davis claims, were done while she was incoherent and intoxicated. According to Davis, "[n]othing in the criminal laws permit male deputies to . . . inappropriately touch female detainees without their consent."[37] To this end, rather than assist Davis at the scene, Davis claims the Deputies should have enlisted the aid of another female deputy.[38] Davis does not allege any unwanted touching occurred outside the context of the sternum rub or the touching incidental to pulling up Davis's pants.[39] In moving for summary judgment, Defendants respond that the sternum rub did not violate Davis's constitutional rights; they claim this was an appropriate situation for the maneuver. As for helping Davis with her pants, the Deputies claim they acted in accordance with their training and assisted someone in need. In any event, the Deputies argue they are entitled to qualified immunity on Davis's excessive force claim.

---

[37] Record Document 41, p. 21.
[38] Id. at 10.
[39] Video footage confirms that the officers did not touch Davis outside the context of or incidental to the two actions Davis claims constitute excessive force.

10

The Fourth Amendment affords individuals the "right to be free from excessive force during a seizure." Trammell v. Fruge, 868 F.3d 332, 340 (5th Cir. 2017) (quoting Poole, 691 F.3d at 627). To prevail on her excessive force claim, Davis must show "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Ontiveros v. City of Rosenberg, Tex., 564 F.3d 379, 382 (5th Cir. 2009) (quoting Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007)). Excessiveness turns upon whether the degree of force used was reasonable in light of the totality of the circumstances facing the officer in each case. Graham, 490 U.S. at 396 (citing Tennessee v. Garner, 471 U.S. 1, 8–9 (1985)). The reasonableness of the officers' conduct cannot be judged with the benefit of hindsight; it must be assessed from the viewpoint of a reasonable officer on the scene at that very moment. See Graham, 490 U.S. at 396.

At the outset, Davis vaguely notes that she suffers from a host of mental issues stemming from her encounter with the Deputies. Assuming Davis intends to use her "psychological injuries" as the basis for her excessive force claim, she is entitled to do so. Tarver, 410 F.3d at 752. Nevertheless, Davis has failed to allege that the Deputies used force that was clearly unreasonable. As it relates to the sternum rub in particular, it is undisputed that Davis was unresponsive when the Deputies arrived on the scene.[40] Camera footage shows the Deputies asking Davis multiple questions and attempting to provoke a response, but Davis remained unresponsive.[41] Deputy Thomas explained in his

---

[40] Thomas Video at 1:45.
[41] Id. at 2:20–:53.

11

deposition that a sternum rub was a maneuver that he learned at basic training; it was taught as a means to wake an unresponsive individual.[42] And in this case, Deputy Thomas believed a sternum rub was necessary to wake a seemingly unconscious motorist. Viewing the totality of the circumstances, the Court concludes the degree of force Deputy Thomas used in this situation was neither clearly excessive nor unreasonable.

As for the unwanted touching, moreover, Davis is likewise unable to establish that it violated her constitutional rights. When the Deputies found Davis, she was half naked and intoxicated in the middle of a public highway. The video footage shows the Deputies attempting to find her clothes and then helping Davis cover her exposed body. In a matter of seconds,[43] the Deputies lifted Davis by her arms and pulled Davis's pants over her legs. What is more, the Deputies only did so after repeated attempts to have Davis pull the pants up herself. Even if the Deputies should have requested the assistance of a female officer—as Davis argues—the Deputies' actions were not excessive. Assessing the officers' conduct from the viewpoint of a reasonable officer at the scene, the Court concludes that the Deputies' behavior did not rise to the level of a Fourth Amendment violation. Based on the dash camera footage, and viewing the evidence in the light most favorable to Davis, the Court holds that the Deputies' actions were neither excessive nor objectively unreasonable. As a result, both Deputies are entitled to qualified immunity, and Davis's excessive force claim is dismissed.

---

[42] Record Document 20-5, pp. 6–7.
[43] The encounter lasted a total of ten seconds. Thomas Video at 5:25–:35.

e. Illegal Search—Fourth Amendment

Davis also contends the Deputies violated her constitutional rights when they searched her sedan without a warrant. The Deputies disagree and point to video footage showing Davis consenting to a vehicle search. But even without consent, the Deputies argue they had probable cause to look for evidence or contraband in Davis's car.

Generally, a warrantless search is unreasonable. See United States v. Reed, 26 F.3d 523, 528 (5th Cir. 1994). But this precept is subject to various qualifications, one being the automobile exception. The automobile exception allows law enforcement officers to search a vehicle without a warrant when they have probable cause to do so, that is, when they believe the vehicle contains contraband or evidence. See Maryland v. Dyson, 527 U.S. 465, 467 (1999). Determining whether probable cause exists requires a court to consider the totality of the circumstances. Id.

Here, before searching Davis's vehicle, the Deputies asked Davis to give her name, but she was unresponsive.[44] The Deputies then rummaged through her car looking for a form of identification.[45] Once Davis began audibly communicating with the Deputies, they asked if they could search her vehicle.[46] She responded: "No sir, I don't care."[47] Davis does not dispute this, but argues the Deputies "coerced" her into agreeing to the search.[48] The dash camera footage and audio, however, do not support this claim.[49] In any event,

---

[44] Id. at 5:35–:45.
[45] Id. at 6:00–:15.
[46] Id. at 22:50–23:01.
[47] Id. at 23:02.
[48] Record Document 41, p. 11.
[49] Thomas Video at 23:02.

13

whether the Deputies obtained consent is immaterial because they had probable cause to conduct a warrantless search. See United States v. McSween, 53 F.3d 684, 686 (5th Cir. 1995) (concluding that either consent or probable cause may independently support a warrantless vehicle search).

To be clear, when the Deputies arrived at the scene, they found Davis alone and half naked on a public highway; she was in a parked car with its engine running.[50] Deputy Thomas noted what appeared to be a puddle of urine next to Davis's opened passenger side door and the strong smell of alcohol on her breath.[51] Both Deputies could see alcohol bottles through the windows of her sedan before engaging in the search.[52] Davis's shoes were located on the driver's side floorboard, and when Davis eventually woke up, she indicated she had been the only person in the car.[53] These undisputed facts show the Deputies had a basis for suspecting Davis was drinking and driving and that her vehicle contained evidence of that crime. Viewing the totality of the circumstances, the Court concludes that the Deputies had probable cause to search Davis's vehicle. As a result, they did not violate Davis's Fourth Amendment rights.

f. Conspiracy Claim

As it relates to their alleged conspiracy, Davis contends the Deputies conspired to deprive her of "equal protection" under the Constitution. To establish a Section 1983 conspiracy claim, Davis must show: "1) an agreement between the alleged conspirators

---

[50] Id. at 1:45.
[51] Record Document 20-5, p. 3.
[52] Thomas Video at 7:43.
[53] Record Document 20-4, p. 12.

14

to commit an illegal act, and 2) an actual deprivation of constitutional rights." Navarro v. City of San Juan, Tex., 624 F. App'x 174, 179 (5th Cir. 2015). Because Davis has not established the violation of a constitutional right, she cannot establish an essential element of this liability theory. Consequently, her Section 1983 conspiracy claim must be dismissed.

g. Monell Claim

Having determined no Section 1983 liability on the part of the Deputies, the Court turns next to Davis's claims against the Desoto Parish Sheriff's Department and the Desoto Parish Sheriff, Jayson Richardson. Davis alleges Monell liability against the Department and Sheriff Richardson because she claims they maintained the policies that allegedly allowed the Deputies to violate her constitutional rights. See Monell v. Dep't of Soc. Serv. of New York, 436 U.S. 658, 694 (1978). Davis claims that Sheriff Richardson, in his official and individual capacity, was responsible for the supervision, practices, procedures, and customs of the Department. To impose liability on a municipality under Section 1983, a plaintiff must prove the existence of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy. Piotrowski v. City of Hous., 237 F.3d 567, 578 (5th Cir. 2001) (citing Monell, 436 U.S. at 694).

Before considering the merits of Davis's Monell claim, the Court will dismiss the claims against Sheriff Richardson in his individual capacity. When plaintiffs sue state actors in their individual capacity, they must allege specific actions giving rise to a constitutional violation. Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002). Here, Davis

15

does not claim Sheriff Richardson was present at the scene of the incident giving rise to Davis's complaint; she alleges that he maintained "unconstitutional policies which permitted the violation of Davis's rights."[54] For that reason, Davis's Monell claim against Sheriff Richardson is based on his official status as head of the Desoto Sheriff's Department, and as a result, Davis's claims against the Sheriff in his individual capacity are dismissed. The Court will also dismiss the claims against the Desoto Parish Sheriff's Department because it is not a legal entity capable of being sued. See Cozzo v. Tangipahoa Par. Council, 279 F.3d 273, 283 (5th Cir. 2002).

This leaves only the claims against Sheriff Richardson in his official capacity. As with Davis's other Section 1983 claims, though, she is unable to establish Monell liability because, among other reasons, she has not provided any evidence that the Deputies violated her constitutional rights.[55] See Bustos v. Martini Club Inc., 599 F.3d 458, 467 (5th Cir. 2010) ("[A] municipality cannot be liable '[i]f a person has suffered no constitutional injury at the hands of the individual police officer.'") (quoting City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)). The Court has already concluded that Davis was unable to show a Fourth, Fifth, Eighth, or Fourteenth Amendment violation; thus, Davis's Monell claim is dismissed.

II. State Law Claims

Along with her federal law causes of action, Davis alleges Defendants are also liable under multiple state law theories. Specifically, she contends that the Deputies violated

---

[54] Record Document 1, p. 13.
[55] Indeed, Davis has also failed to identify any specific policy or action that caused an underlying constitutional violation.

her rights under the Louisiana Constitution, that they intentionally inflicted emotional distress ("IIED"), and that Sheriff Richardson is vicariously liable for the Deputies' wrongful conduct. The Court will invoke its supplemental jurisdiction to consider these claims. 28 U.S.C.A. § 1367.

a. State Constitutional Claim

Davis first alleges that the Deputies violated her "liberty interests" guaranteed by the Louisiana Constitution under Article I, Section 3. This Section states in part that:

> No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations.

La. Const. art. I, § 3. "Courts have previously held that Article I, § 3, deals with laws that discriminate against an individual and does not create a cause of action against a private individual or company for violation of rights." Dupree v. Belton, No. 10-1592, 2013 WL 701068, at *9 (W.D. La. Feb. 26, 2013) (citing Smolensky v. Gen. Elec. Co., No. 99-1849, 2000 WL 341031 (E.D. La. Mar. 30, 2000)). Davis has not directed the Court to any law that discriminated against her on any basis. Because Davis "is not challenging a specific law, but rather the acts of the individual defendants, [s]he does not have a cause of action under Article 1, § 3." Id. This claim is dismissed.

b. Intentional Infliction of Emotional Distress

Next, Davis contends the Deputies' conduct toward her constituted intentional infliction of emotional distress. To prevail on an IIED claim under Louisiana law, a plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant

17

desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991).  The conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id.  In her complaint, Davis claims the "cumulative effects" of the Deputies' "nonconsensual touching" caused severe emotional distress.[56]  But in her opposition, she does not expand on her argument; she simply lists the elements of an IIED claim.[57]  Having examined and discussed the Deputies' conduct at length, the Court concludes the Deputies' behavior was neither extreme nor outrageous, and certainly not "utterly intolerable in a civilized community." Id.  As a result, Davis's IIED claim is dismissed.

    c. Employer Liability

Likewise, Davis's vicarious liability claim against Sheriff Richardson also fails.  Under Louisiana law, "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." La. Civ. Code art. 2320.  Because Davis has not established any liability on the part of the Deputies, she cannot establish any liability on the part of the Sheriff.  See Grafton v. Bailey, No. CV 13-2940, 2018 WL 2325410, at *13 (W.D. La. May 22, 2018) ("Because Defendants have established [the Deputy's] entitlement to summary judgment as to those

---

[56] Record Document 1, p. 8.
[57] Record Document 41, pp. 24–25.

claims, Plaintiffs' vicarious liability claim against [the Sheriff] should be dismissed as well."). As a result, this claim is also dismissed.

## Conclusion

For the above-stated reasons, **IT IS ORDERED** that Defendants' motion for summary judgment is **GRANTED**.[58] **IT IS FURTHER ORDERED** that all claims against the Desoto Parish Sheriff's Department, Sheriff Jayson Richardson in his individual and official capacities, Jeffery Henderson in his individual and official capacities, and Christopher Thomas in his individual and official capacities are **DISMISSED WITH PREJUDICE**. A separate judgment will be entered consistent with this Memorandum Ruling.

**THUS DONE AND SIGNED** this 26th day of April, 2022.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

---

[58] Record Document 20.